|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **DISTRICT OF NEVADA** | |

MICHAEL SPENCER,

      Plaintiff,

    vs.

GLEN WHORTON, *et al.*,

      Defendants.

) 3:07-CV-00635-LRH-VPC
)
) **REPORT AND RECOMMENDATION**
) **OF U.S. MAGISTRATE JUDGE**
)
) February 5, 2009

    This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for preliminary injunction and/or temporary protective order; and temporary restraining order (#48).[1] Defendants opposed (#65) and plaintiff replied (#66). The court has thoroughly reviewed the record and the motions and recommends that plaintiff's motion for preliminary injunction and/or temporary protective order; and temporary restraining order (#48) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

    Plaintiff Michael Spencer ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#8). Plaintiff brings his complaint pursuant to 42 U.S.C. § 2000cc et seq., the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and 42 U.S.C. § 1983, alleging violations of

---

[1]This is a consolidated action of seven cases. Plaintiff Spencer moved to consolidate his case with that of plaintiffs McCaskill (3:07-cv-0634), Williams (3:08-cv-0020), McGee (3:08-cv-0023), Tracy (3:08-cv-0024), and Askins (3:08-cv-0025) (#10), and the court granted the motion, ordering that case number 3-07-cv-00635-LRH-VPC be designated as the base case for the consolidated action (#42). Plaintiff Harris's case (3:08-cv-00145) was later consolidated into the base case (#59). It appears that Plaintiff Spencer wrote the instant motion for preliminary injunction (#48) before the cases were consolidated; therefore it is written on behalf of himself only. Although the contents of the motion pertain to all plaintiffs, for the purposes of this Report and Recommendation, as the motion was brought by plaintiff Spencer before conspolidation, the court will refer to plaintiff Spencer in the singular as "plaintiff."

his First and Fourteenth Amendment rights to free exercise of religion, due process and equal protection of the law. *Id*. Plaintiff names as defendants Glen Whorton, former NDOC Director; Howard Skolnik, NDOC Director; Dorothy Nash-Holmes, former NDOC Program Administrator; Don Helling, Deputy Director of NDOC Programs; William Donat, NSP Warden; James Baca, NSP Associate Warden; Chaplain Garcia, NDOC Supervising Chaplain; and Reverend Jane Foraker-Thompson, former NDOC Supervising Chaplain. *Id*.

The instant motion arises from seven consolidated cases brought against NDOC officials by members of Asatru and Odinist religious groups (#8, #42, #59). In the four counts of his complaint, plaintiff alleges defendants have violated his First, Eighth, and Fourteenth Amendment rights by severely limiting the means by which he can practice his religion (#8). In count I, plaintiff claims that NDOC and NSP have violated his First Amendment rights by denying him "the free-exercise of Asatru and Odinic rituals and observances." *Id*. p. 8. Specifically, defendant Donat and Baca ordered the closure, demolition, and rebuilding of the Asatru and Odinist religious grounds, which effectively denied all religious rites and rituals for three and a half months. *Id*. Plaintiff further contends that in closing the Asatru and Odinist religious grounds, NDOC officials violated RLUIPA, as the closing "served no governmental or penological interest...[and was not] narrowly tailored to the least restrictive means." *Id*. p. 9. Plaintiff also claims that Administrative Regulation ("AR") 810 "ha[s] become progressively restrictive as to what is allowed for the practice of the Asatru/Odinist Faith Group members...," and that AR 810 has allowed NDOC officials to take actions which have substantially burdened plaintiff's religious practices. *Id*. Plaintiff asserts that because of certain provisions in AR 810, defendants have confiscated and limited the use of plaintiff's religious property, including natural anointing oils, incense, and Thor's hammer, have revoked plaintiff's right to have ritual and cooking fires, have restricted plaintiff's use of religious land, and have forbidden plaintiff from planting herbs. Through these restrictions, AR 810 "substantially restrict[s] and burden[s] plaintiff's exercise of religion." *Id*. p. 15.

In count II, plaintiff contends that defendants have violated his Fourteenth Amendment rights to due process and equal protection. *Id*. p. 17. Plaintiff asserts that AR 810 deprived him

2

of his religious rights without due process of law as NDOC officials restricted his religious practices on multiple occasions "without a hearing in regards to safety and security, or any legal justification to do so, no write-up or notification was served to plaintiff." *Id*. Although plaintiff does not specifically cite the First Amendment, he alleges that defendants Donat and Baca restricted plaintiff's religious practices in retaliation for him filing grievances against them. *Id*. p. 18.

In count III, plaintiff asserts that defendants violated his Fourteenth Amendment right to equal protection by enforcing AR 810. *Id*. p. 19. Plaintiff claims that AR 810 "denies equal protection as other religious and mainstream faiths are treated differently."*Id*. Specifically, plaintiff contends that AR 810 allows other religious groups, but not Asatrus and Odinists, to take religious meals to their units or cells for consumption, disallows plaintiff the use of "Thor's Hammer", but does not restrict other religious groups from using their religious symbols, and limits plaintiff's access to religious literature, where other religious groups are not limited. *Id*. p. 20.

In count IV, plaintiff alleges that defendants violated his Eighth Amendment right against cruel and unusual punishment by overly restricting his religious practices. *Id*. p. 23. Plaintiff's constitutional claims are "serious and extreme" and defendants were "deliberately indifferent to plaintiff's rehabilitative needs." *Id*. p. 24. Defendants' restriction of plaintiff's religious practices "caused stress, anxiety, mental, and emotional distress." *Id*. Plaintiff also raises a retaliation claim, stating that because he brought the instant law suit, defendants have placed him under investigation and denied him parole. *Id*. p. 25.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

**A.     Discussion**

      **1.     Preliminary Injunction Standard**

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief... .

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

A prohibitory injunction preserves the *status quo* while litigation is pending, and a mandatory injunction provides preliminary relief well beyond maintaining that status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

4

**2.     Temporary restraining order**

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *Brown Jordan Intern., Inc., v. Mind's Eye*, 236 F. Supp.2d 1152, 1154 (D. Haw. 2002). Moreover, it is appropriate to treat a non-*ex parte* motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE CIV. 2d § 2951 (2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

**B.     Analysis**

Plaintiff requests injunctive relief in four areas. Specifically, he asks the court to order NDOC:

> A) Not to reduce the size of Earth-Based Faith Groups' Religious Lands; and that said lands are to remain at, or be restored to sizes which existed prior to June 9, 2008; B) Not to remove any altars, plants, circles, or any other items from Earth-Based Religious Lands, or to restore said items, as they existed prior to June 9, 2008; C) to allow a minimum of twelve (12) worship services for the Earth Based Faith Group known as Asatru/Odinist as set forth in Exhibit "C" of this motion; D) to allow ritual cooking fires and ritual fires on a minimum of twelve (12) worship services as set forth above in "C" (#48, p. 18).

Defendants oppose "based on the lack of likelihood plaintiffs will succeed on the merits, the lack of harm to the plaintiffs, the balance of the hardships favoring the defendants, and public interest supporting prison security" (#65, p. 1). Plaintiff replies that defendants have "not presented any valid safety, security, or penalogical interest claims" to justify the burden placed on plaintiff's religious practices (#66, p. 10).

**1.     Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

**a.     Law**

5

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc *et seq.*, provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id.* at 995. RLUIPA is to be construed broadly in favor of the inmate. *See* 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution"). The Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of religion" is at issue; (2) whether there is a "burden," if any, imposed on that exercise of religion; (3) if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden," whether it is justified by a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *Navajo Nation v. U.S. Forest Service*, 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008).

Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden, on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (*quoting San Jose Christian coll. V. City of*

6

1  *Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious
2  practice that is compelled by, or central to, a system of religious belief, *see* 2000cc-5(7)(A);
3  however, the burden must be more than an inconvenience. *Navajo Nation*, 479 F.3d at 1033
4  (internal quotations and citations omitted). In fact, RLUIPA "bars inquiry into whether a
5  particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkenson*, 544 US 706,
6  725, n. 13 (2005). The burden must prevent the plaintiff "from engaging in [religious] conduct
7  or having a religious experience." *Navajo Nation*, 479 F.3d at 1033 (internal citations omitted).
8        Courts must also take into account the burdens a requested accommodation may impose
9  on non-beneficiaries. *Cutter*, 544 U.S. at 720. In its analysis of the "compelling governmental
10 interest" standard, the court must exhibit a "particular sensitivity to security concerns" and be
11 "mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id*. at 722-
12 23. To that end, the court should apply RLUIPA's standard with deference to the expertise of
13 prison administrators in establishing regulations that will maintain order consistent with the
14 consideration of costs and limited resources. *Id*. (internal citations omitted). Finally, the Supreme
15 Court has specifically noted that RLUIPA "does not differentiate among bona fide faiths" and has
16 stated that courts must be satisfied that RLUIPA's "prescriptions are and will be administered
17 neutrally among different faiths." *Id*. at 720, 723.

18                         **b.    Analysis**

19      Plaintiff claims "the likelihood of plaintiff winning a final judgement (sic) in this case is
20 overwhelming" (#48, p. 6). Plaintiff states that defendants have not raised a valid defense to his
21 complaint and have not prevailed on motions to dismiss in similar actions. *Id*. p. 16. Defendants'
22 view is that plaintiff cannot show a likelihood of success on the merits of the complaint because
23 the facts asserted in the complaint "took place wholly under the previous regulation..."(#65, p. 3).
24 Plaintiff replies that the facts alleged in the motion for preliminary injunction are related to the
25 merits of the case, regardless of whether the previous version of AR 810 was in place when the
26 action was commenced, because the new version of AR 810 "seeks to further restrict religious
27 practices of their religious group raised in their initial complaints" (#66, p. 8).
28       Although plaintiff refers to the many ways in which the new AR 810 restricts his ability

1   to practice his religion in the ways that were afforded by previous NDOC policies, he does not
2   demonstrate a likelihood of success on the merits. Plaintiff's action was commenced before the
3   new AR 810 was in place. Plaintiff has discussed the restrictions imposed by the new AR 810,
4   but does not argue the merits of his action. Plaintiff has not demonstrated a likelihood of success
5   on the merits so as to warrant the drastic remedy of preliminary injunction. *Sierra Club v. Hickel*,
6   433 F.2d 24, 33 (9th Cir. 1970) ("The grant of preliminary injunction is the exercise of a very far
7   reaching power never to be indulged except in a case clearly warranting it.").

8   Additionally, although plaintiff is correct that defendants were not fully granted motions
9   to dismiss in two similar cases (2:06-cv-00818-PMP-GWF, #30, 3:06-cv-00473-ECR-VPC, #32),
10  this does not bear on the merits of plaintiff's case. First, case 06-818 is currently pending in this
11  court. The partial denial of a motion to dismiss in that case has no effect on whether plaintiff's
12  will succeed on the merits in this case. Further, case 06-473 was dismissed pursuant to a
13  settlement agreement and there was no decision on the merits. Therefore, the partial denial of a
14  motion to dismiss in that case  has no effect on whether plaintiff will succeed on the merits here.

15              **2.     Irreparable Injury**

16  To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably
17  injured without the injunction. *Johnson*, 72 F.3d at 1430.  "Courts generally do look at the
18  immediacy of the threatened injury in determining whether to grant preliminary injunctions."
19  *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991)
20  *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened
21  injury as a prerequisite to preliminary injunctive relief").

22  Plaintiff claims that he has suffered irreparable injury because "the loss of constitutional
23  rights, even for short periods of time, constitutes irreparable injury" (#48, p. 4). Plaintiff contends
24  that the new version of AR 810 has led to further loss of religious land, altars, inmate religious
25  facilitators, and the restriction and reduction of holy days and services. *Id*. Defendants' position
26  is that plaintiff fails to demonstrate how his First Amendment rights are being violated; therefore,
27  he has not demonstrated an irreparable injury (#65, p. 4). Plaintiff replies that he has stated what
28  harm AR 810 imposes, and that the loss of religious practices is a First Amendment violation.

8

Plaintiff is correct that "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartan v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002). However, plaintiff has not presented sufficient evidence to show that his First Amendment rights are immediately threatened. Although the new version of AR 810 does appear to limit plaintiff's practice of religion, plaintiff does not demonstrate that defendants have taken actions that clearly violate his First Amendment rights, as he has not shown that each of the restrictions places a substantial burden on his religious practice. Plaintiff has not demonstrated that the reduction in size of religious lands or the removal of certain altars and other items violates his First Amendment rights. Plaintiff is still able to practice his religion, albeit in a more limited setting. Additionally, plaintiff has not demonstrated that nine, rather than twelve worship services violates his First Amendment rights or causes irreparable harm. The court does not disagree that such restrictions do not allow plaintiff to practice his religion to the extent he deems proper. However, based on the evidence presented, the court concludes that there is not sufficient evidence of irreparable harm because plaintiff has not proven a First Amendment violation at this point.

### 3. Balance of Hardships and Public Interest

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the Court has not addressed the balance of hardships or public interest elements.

### 4. Alternative Test

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Above the Court concluded that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, although there are some questions as to the effect of the restrictions imposed on plaintiff's religious practices by the new AR 810, there are not at this time "serious" questions as to plaintiff's First Amendment claim. Further, the balance of hardships do not tip "sharply" in plaintiff's favor; while plaintiff's religious practices are very important, defendants also have an interest in maintaining safety and security. Thus, plaintiff has not met the second alternative test.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not provided evidence to the court that he is likely to succeed on the merits of his First Amendment claim, nor has he demonstrated he will suffer irreparable harm in the absence of an injunction. As such, the court recommends that plaintiff's motion for preliminary injunction; and/or temporary protective order; and temporary restraining order (#48) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for preliminary injunction; and/or temporary protective order; and temporary restraining order (#48) be **DENIED**.

**DATED:** February 5, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**

10